# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZIPIT WIRELESS, INC., | |
|     Plaintiff, | |
|     v. | Civil Action No. _____ |
| GOOGLE LLC; | **JURY TRIAL DEMANDED** |
|     Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Zipit Wireless, Inc., for its Complaint against Defendant Google LLC, alleges as follows:

## INTRODUCTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

## THE PARTIES

2.      Plaintiff, Zipit Wireless, Inc. (hereinafter "Zipit") is a Delaware Corporation with a principal place of business located at 101 North Main Street, Suite 201, Greenville, South Carolina 29601.

3.      On information and belief, Defendant Google LLC is a Delaware limited liability company.  On information and belief, Defendant Google LLC's registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION

4.      This Court has subject matter jurisdiction over all causes of action set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §271 *et seq*.

5.      Defendant is in the business of supplying instant messaging devices, such as smartphones, in and throughout the United States, including in this State and in this judicial district.

6.      This Court may properly exercise personal jurisdiction over the Defendant. Defendant is a Delaware LLC.

7.      Defendant has solicited business in this State, transacted business within this State and attempted to derive financial benefit from residents of this State, including benefits directly related to the instant patent infringement cause of action set forth herein.

8.      Defendant has made, used, sold, offered for sale, and/or imported instant messaging devices or wireless mobile communications devices, such as smartphones, in this judicial district and/or has placed such phones into the stream of commerce with the knowledge and intent that such phones have been offered for sale, sold, and/or used in this State and this judicial district.  On information and belief, Defendant's customers in this State have purchased and used and continue to purchase and use Defendant's products.

9.      At the time of filing of this Complaint, Defendant's smartphones are available for purchase by consumers in this State, including within this judicial district.

10.     This Court has personal jurisdiction over Defendant because: (i) Defendant is a Delaware LLC; (ii) Defendant has and continues to intentionally sell products and methods, including the infringing methods, to customers in this State; (iii) Defendant has and continues to intentionally instruct customers and potential customers in this State with respect to how to use the

2

products and methods that Defendant sells to customers in this State; (iv) Defendant knows and has known its products and methods, including the infringing methods, have and continue to be sold and marketed in this State; (v) Defendant knows and has known that its manufactured products and methods will enter the United States of America and this State; (vi) Defendant has and continues to target customers and potential customers in this State to buy and/or use Defendant's products and methods, including the infringing methods; (vii) Defendant has and continues to provide advice to customers in this State; (viii) it has been and continues to be foreseeable that Defendant's products and methods, including the infringing methods, would enter this State; (ix) Defendant has and continues to market to citizens of this State through its website; (x) Defendant has and continues to provide services to citizens of this State through its website; (xi) Defendant derives substantial revenue from this State; (xii) this State has and continues to be part of Defendant's established distribution channels; (xiii) the assertion of personal jurisdiction over Defendant is reasonable and fair; (xiv) and this State has an interest in this matter due to the presence of Defendant's products and methods, including the infringing methods, in this State.

11.     Venue is this district is proper pursuant to 28 U.S.C. §1331, §1338, §1391, and §1400 at least because Defendant is a Delaware entity and Defendant has committed acts of infringement in this judicial district.

## **BACKGROUND**

### **Zipit's Technology**

12.     Zipit has and continues to offer for sale Wi-Fi based instant messaging solutions. Zipit's first product, the Zipit Wireless Messenger:



was introduced in 2004 and was sold through major retailers including Target, Best Buy, Radio Shack, and Amazon and received press coverage in the Chicago Tribune, the New York Times, and many media outlets.

13. In 2007, Zipit introduced its second-generation Wi-Fi based instant messaging device known as "Z2":



4

14.      In 2011, Zipit launched an enterprise messaging solution in conjunction with a major U.S. cellular carrier and is actively selling this solution into healthcare, hospitality, ems, manufacturing, utility, and government accounts.  Zipit's solution has been deployed in over 250 enterprise customers across the U.S. and Zipit's customer base continues to grow monthly.

### Zipit's Awards And Notoriety

15.      In 2005, *Time Magazine* awarded Zipit's first Wi-Fi instant messaging device ("Zippy") Time's "The Most Amazing Inventions of 2005" Award:



To determine the award winners, Time Magazine "spent more than six months surveying fields as diverse as electronics, aeronautics, medical technology, sports equipment, toys, clothing and food looking for the newest-and most inspired-ideas of the year."

16.      Zipit's "Zippy" instant messaging device also won an award from iParenting Media in 2006.

17.     Zipit's "Zippy" Wi-Fi instant messaging device also received praise and acclaim in media across the United States and the World in at least the Chicago Tribune "Zipit is king of messengers" (March 3, 2005); the New York Times "Making an Easy Task, Instant Messaging, Even Easier." (March 10, 2005); the New York Times "Making an Easy Task, Instant Messaging, Even Easier." (March 21, 2005) (Online Edition); the Austin American-Statesman "Gadgets: … Instant messaging with no extra charges" (March 21, 2005); ABC12.com "Zipit Wireless Messenger" (Aug. 15, 2005); ABC12.com "Zipit Wireless Messenger" (Aug. 22, 2005); The Greenville News (Dec. 5, 2004); Parade "a brilliant little device" (April 24, 2005); Univision.com; ym.com "What's Hot: March 15, 2005" (March 17, 2005); Gizmodo "Perfect for the IM addict" (July 19, 2005); Gizmodo "Teacher's Worst Nightmare - Aeronix ZipIt" (Sept. 29, 2005); HeraldToday.com ("Zipit rules wireless messenging world") (March 10, 2005); HUB: Digital Living (March 2005); New York Daily News "Hot, hotter, hottest: The Definitive guide to who and what is sexy right now" "Gadgets" (April 3, 2005); and the St. Petersburg Times "2005 Annual Gadget Guide From Apple to Zipit" "For the good times" (Nov. 28, 2005).

18.     Zipit's second version of its Wi-Fi instant messaging device, "Z2," also was widely praised and acclaimed.  In 2007, PC Magazine awarded Zipit's "Z2" the "Winner" of its "Best of Show" award at the Digital Life show in the category of "Portable Gear."  Zipit's "Z2" also won another award from iParenting Media in 2008.

19.     Zipit's "Z2" Wi-Fi instant messaging device, also was praised in at least the following media sources: PC Magazine DigitalLife 2007 "Best of Show" (Sept. 28, 2007); DigitalLife's "Best of Show Award" (Oct. 2, 2007); 2013 iParenting Media Awards – Winner – Zipit Wireless Messenger 2 (April 30, 2008); 2014, Video – Z2 Highlight Reel (The Today Show; USA Today; Associated Press Article; The Washington Post; The Boston Globe; Houston

6

Chronicle; The Philadelphia Inquirer; The Kansas City Star; The Miami Herald; San Francisco Chronicle; Orlando Sentinel; Rocky Mountain News; ABC Television Channel 7; CNN Television; FOX News FOX & Friends; The New York Times; Pittsburgh Post-Gazette; MTV Television; Yahoo! Tech; CNET; eva; The Montel Williams Television Show; NBC Channel 5; LINUX Journal; WNN Wi-Fi News; Digital Tech News'; Wireless Week; electronista; I40 News; Best stuff; FOX & Friends (2015); The Montel Williams Show (Dec. 6, 2006; WABC – New York Channel 7 (Dec. 17, 2006); FOX Business (March 19, 2008); The Today Show (Jan. 6, 2008);  MTV; The Detroit News – "In our opinion - Zipit Z2 perfect for kids" (June 30, 2008); the Akron Beacon, Ohio.com (April 14, 2008); the Arizona Star (April 3, 2008); the BaltimoreSun.com (April 17, 2008); The Record NorthJersey.com "Kids and their parents will love the Z2 messaging device" (April 12, 2008); TheStreet.com "Instant Messaging With Mass Appeal" (Dec. 7, 2007); Digital Life "Digital Life Announces the DigitalLife Innovators Class of 2007" (Sept. 24, 2007); E-Gear "Is Anybody Out There" (April 9, 2008); Gizmodo "Zipit Z2 Wireless Messenger Lets Teens IM For Free" (Nov. 7, 2007); GoErie.com " Txt all d tym" "IM friends without tying up computer" (April 11, 2008); CBS4Denver.com "One of the best products for teens, tweens and their parents" (2007); InfoSyncWorld.com "Zipit Z2 Wireless Messenger sends IMs without PC or phone" "it has a dedicated smiley button, which we have never seen before, but now we want on our Treo :-)" (Nov. 7, 2007); InsignifacantThoughts.com (Sept. 28, 2007); KansasCity.com "Better Messages" (Dec. 6, 2007); LinuxDevices.com (Nov. 9, 2007); MiamiHerald.com (Oct. 18, 2007); ny1.com (Sept. 27, 2007); NYTimes.com (Oct. 4, 2007); PCMag.com.br (Sept. 28, 2007); PC.Watch.Impress.co.JP (Dec. 9, 2007); Yahoo! News (Sept. 27, 2007); Register Hardware UK (Nov. 7, 2007); SlashGear.com (Sept. 27, 2007); StarTelegram.com "High-tech hobbies" (Oct. 14, 2007); the Minneapolis StarTribune.com (Oct.

8, 2007); DailyHerald.com (June 23, 2008); The Gazette Canada.com (Oct. 11, 2007);

TheStreet.com "Instant Messenger With Mass Appeal" "a must-have for travelers" (Dec. 7

2007); TimeforKids.com (Nov. 26, 2007); Twice.com (Sept. 27, 2007); ABCNews.com (Nov. 2,

2007); ABCNews: The Ultimate Gift Guide (Nov. 8, 2007); Adweek Magazine "Top 10 Trends

of 2007" (Dec. 17, 2007); BlogStuff.com (Nov. 26, 2007); Blog-SciFi.com (Sept. 27, 2007);

Brighthand.com (Sept. 30, 2007); CBS Tech Toys Review (Oct. 16, 2007); and The Charlotte

Observer Charlotte.com (Oct. 21, 2007).

### Wi-Fi Instant Messaging Devices With Emoticons Drive Purchasing Decisions

20.    Prior to the existence of Wi-Fi instant messaging, carriers typically charged up to

$0.20 per text, or $20.00 per month for unlimited texting.  Thanks to Wi-Fi based instant

messaging, however, consumers no longer had to pay for individual instant messages or monthly

service plans.  As a result, by 2016, it was estimated that consumers saved $54 billion through

the use of Wi-Fi instant messaging instead of from SMS-based instant messaging.

21.    Instant messaging has been and continues to be the single most important

smartphone feature.  Indeed, many potential customers are unlikely to purchase a smartphone

that is not able to generate an instant message comprising an emoji/graphical symbol (☺, ☹) that

is sent over Wi-Fi.

22.    Using a handheld device, such as a smartphone, to send instant messages that

contain emojis is a major and growing form of communication among an incredibly large

demographic.  Indeed, this is reflected by Oxford Dictionary's "word" of the year for 2015,

which was the "face with tears of joy" emoji:



Oxford Dictionary selected the emoji as its "word" of the year because the emoji was "the 'word' that best reflected the ethos, mood, and preoccupations of 2015." It is further reflected by the creation of "World Emoji Day," which is held annually on July 17.

### Zipit's U.S. Patent No. 7,894,837

23.     On February 22, 2011, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,894,837, entitled "Instant Messaging Terminal Adapted For Wireless Communication Access Points." A true and correct copy of U.S. Patent No. 7,894,837 is attached as Exhibit "A." On November 23, 2020 the United States Patent and Trademark Office duly and legally issued Zipit Ex Parte Reexamination Certificate (11758th), which is attached as Exhibit "B." On February 28, 2022 the United States Patent and Trademark Office duly and legally issued Zipit Ex Parte Reexamination Certificate (12009th), which is attached as Exhibit "C."

24.     Zipit is the owner, by assignment, of all right, title, and interest in and to U.S. Patent No. 7,894,837 (hereinafter the "'837 patent"), including the right to sue for past, present, and future patent infringement, and to collect past, present, and future damages.

25.     The '837 patent complies with the Patent Act, including 35 U.S.C. §101, 35 U.S.C. §102, 35 U.S.C. § 103, and 35 U.S.C. §112.

26.     At least claims 25, 26, 32, 40, 41, 42, 47, 55, 56, 60, 61, 66, 67, 68, 73, 74, 79, and 81 of the '837 patent are valid and enforceable.

27.     The '837 patent and its claims are entitled to the benefit of the filing date of May 14, 2004 and also the date upon which Zipit filed a provisional patent application on December 23, 2003.

28.     As the invention(s) claimed in the '837 patent were conceived no later than April 2003, the claims of the '837 patent are further entitled to a priority date of no later than April 2003.

## IPR2014-01506

29.     On March 30, 2015, the PTAB instituted an IPR of the '837 patent.

30.     On June 22, 2015, Zipit filed its "Patent Owner's Response Under 37 C.F.R. §42.120."

31.     On March 29, 2016, the PTAB issued a Final Decision that confirmed the patentability of all claims of the '837 patent in IPR2014-01506.

32.     All papers and pleadings filed with the PTAB for IPR2014-01506 are part of the prosecution history of the '837 patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2014-01506 are incorporated by reference.

## IPR2019-01568

33.     On August 30, 2019, Google LLC *et al*. filed a Petition For *Inter Partes* Review of the '837 patent, IPR2019-01568.

34.     On June 2, 2020, Zipit filed a Response to the Petition, requesting the PTAB to deny the Petition.

35.     All papers and pleadings filed with the PTAB for IPR2019-01568 are part of the prosecution history of the '837 patent.  Due to their size and volume, the papers and pleadings filed with the PTAB for IPR2019-01568 are incorporated by reference.

**IPR2021-01129, IPR2021-01130, And IPR2021-01131**

36.     On June 16, 2021, Microsoft Corporation and Apple Inc. jointly filed three

Petitions For *Inter Partes* Review of the '837 patent, IPR2021-01129, IPR2021-01130, and

IPR2021-01131.

37.     Microsoft Corporation and Apple Inc. did not challenge the patentability of claims

25, 26, 32, and 47 of Zipit's '837 patent, which the USPTO issued to Zipit on November 23,

2020 before Microsoft Corporation and Apple Inc. filed their three IPR Petitions.

38.     Microsoft Corporation and Apple Inc. also did not challenge the patentability of

claims 51-80 of Zipit's '837 patent, which the USPTO issued to Zipit on February 28, 2022 after

Microsoft Corporation and Apple Inc. filed their three IPR Petitions.

39.     On March 15, 2022, Zipit filed a Response to each Petition.

40.     On December 20, 2022 the PTAB issued a  Final Written Decision that expressly

confirmed the patentability of claims 40, 41, and 42 of Zipit's '837 patent.

41.     All papers and pleadings filed with the PTAB for IPR2021-01129, IPR2021-

01130, and IPR2021-01131 are part of the prosecution history of the '837 patent.  Due to their

size and volume, the papers and pleadings filed with the PTAB for IPR2021-01129, IPR2021-

01130, and IPR2021-01131 are incorporated by reference.

**DEFENDANT'S INFRINGING INSTANT MESSAGING DEVICES**

42.     On information and belief, Defendant has and continues to offer for sale, sell, use,

import into the United States and this State, and support smartphones, and related services,

which send and receive instant messages comprising an emoji/graphical symbol (☺, ☹) using

more than one instant messaging service over Wi-Fi.

43.     On information and belief, Defendant's infringing smartphones are configured to determine a character sequence corresponding to a graphical symbol in a generated IM message that is compatible with at least one instant messaging service.

44.     On information and belief, Defendant's infringing smartphones are configured to parse a message formed with textual characters and graphical symbols generated with a data entry device to confirm compatibility of the textual characters and graphical symbols with an IM messaging protocol associated with a contact.

45.     On information and belief, Defendant's infringing smartphones are configured to convert graphical symbols in a parsed message not compatible with an IM messaging protocol associated with a selected contact to a character sequence that is compatible with the IM messaging protocol associated with the selected contact.

46.     On information and belief, Defendant's infringing smartphones are configured to provide a message formed with the textual characters and graphical symbols that are confirmed as being compatible with an IM messaging protocol and the character sequence for each converted graphical symbol within an IM message to a wireless transceiver.

47.     On information and belief, Defendant's infringing smartphones are configured to communicate with a first recipient through a first instant messaging service and a second recipient through a second instant messaging service.

48.     On information and belief, Defendant's infringing smartphones are configured to send messages using a first IM messaging protocol and a second IM messaging protocol.

49.     On information and belief, Defendant's infringing smartphones are configured to display IM messages sent to a selected contact in order of transmission of the IM messages.

50.     On information and belief, Defendant's infringing smartphones are configured to display IM messages received from a contact in order of receipt of the IM messages.

51.     On information and belief, Defendant's infringing smartphones are configured to communicate with a first recipient through a first instant messaging service and a second recipient through a second instant messaging service, where the first instant messaging service is different that the second instant messaging service.

52.     Defendant's representative infringing smartphones and related services include each and every smartphone made, used, sold, offered for sale, and/or supported since November 23, 2020 through today.

53.     Defendant's infringing smartphones and related services are instant messaging terminals that are specifically designed to: (i) use an Android operating system; (ii) run an instant messaging application, such as Messages; (iii) send and receive instant messages; (iv) access Defendant's Play Store; and (v) download an instant messaging application.

54.     Defendant's infringing smartphones and related services are preloaded with one or more instant messaging application that is able to, and does, send an instant message comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi.  Defendant provides its customers and potential customers with instructions on how to use its instant messaging devices in the United States and in this State.

55.     Some of Defendant's smartphones that are Wi-Fi capable are not preloaded with an instant messaging application.  Instead of preloading an instant messaging application on the smartphone, Defendant instructs its customers to download an instant messaging application from an application store, such as for example Defendant's Play Store.  Defendant provides its

customers and potential customers with instructions on how to use these instant messaging devices in the United States.

56.     On information and belief, Defendant's infringing instant messaging devices are smartphones that have been and continue to be offered for sale, sold, used, and imported into the United States and this State preloaded with an instant messaging application, such as for example, Messages.  The Messages application allows Defendant's smartphones to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi.

57.     On information and belief, Defendant knowingly and intentionally encourages end users to download third party instant messaging applications onto one or more of Defendant's smartphones so that an end user is able to use one or more of Defendant's smartphones to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi. On information and belief, some of these third-party instant messaging applications also may be preloaded onto Defendant's smartphones.  These instant messaging apps allow Defendant's smartphones to send instant messages comprising an emoji/graphical symbol over Wi-Fi.

58.     On information and belief, Defendant has and continues to steal Zipit's patented technology to illegally make money in the United States and in this State.  On information and belief, Defendant illegally makes money by, for example, (i) selling smartphones that could not otherwise be sold if they were unable to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (ii) selling instant messaging applications that allow a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iii) selling advertisements that are displayed during an end user's use of an instant messaging application that is able to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iv) selling features in an instant

messaging application that allows a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; and (v) selling information about end users who use an instant messaging application to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection.

**Zipit's '837 Patent Is Not Abstract**

59.     The claims of the '837 patent are focused on an advance over the prior art such that their character as a whole is not directed to excluded subject matter, such as an abstract idea, or any other subject matter excluded under 35 U.S.C. §101.

60.     In fact, the PTAB determined that the combinations claimed in the claims of the '837 patent were novel and nonobvious, as did the Patent Office during its initial review of the claims.

61.     The advancement claimed in the claims of the '837 patent includes, *inter alia*, an instant messaging terminal and method that includes a housing, a display mounted in the housing, a data entry device that affords the generation of textual characters and graphical symbols, a wireless Internet protocol communications module, a wireless transceiver, and a control module that includes a processor for executing an application program to implement instant messaging and session protocols for a conversation.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The claimed combination also improved the operation of computer functionality, overcoming various failures with existing computing devices as discussed in the Background of the Invention and the Summary of the Invention.

62.     For example, providing the claimed combination in a handheld terminal (as opposed to a desktop, laptop, or PDA requiring external peripheral data entry and/or display devices) represented a significant advance in computer functionality, including generation of both textual characters and graphical symbols using a data entry device integrated into the handheld terminal.  This avoided the need for a platform to support the data entry device during data entry.  Furthermore, the claimed data entry device for generating textual characters and graphical symbols improved the efficiency of computing devices by allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

63.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a housing, a display mounted in the housing, a data entry device that affords the generation of textual characters and graphical symbols, a wireless Internet protocol communications module, a wireless transceiver, and a control module that includes a processor for executing an application program to implement at least one instant messaging protocol for generation of instant messaging data messages that are compatible with an instant messaging service.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  The claimed combination also improved the operation of computer functionality, overcoming various failures with existing computing devices as discussed in the Background of the Invention and the Summary of the Invention.

64.     For example, providing the claimed combination in a handheld terminal (as opposed to a desktop, laptop, or PDA requiring external peripheral data entry and/or display devices) represented a significant advance in computer functionality, including generation of both textual characters and graphical symbols using a data entry device integrated into the handheld terminal.  This avoided the need for a platform to support the data entry device during data entry.  Furthermore, the claimed data entry device for generating textual characters and graphical symbols improved the efficiency of computing devices by allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

65.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a plurality of keys for graphical symbols, each graphical symbol key including indicia identifying the graphical symbol generated by depressing the key bearing the indicia.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

66.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes at least one programmable key associated with a set of characters corresponding to a graphical symbol supported by an instant

messaging service provider. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

67.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module to generate, in accordance with the at least one instant messaging protocol being implemented, a character sequence corresponding to a graphical symbol in response to the depression of the programmable key being depressed. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. This claimed feature also relates to the improvement in the efficiency of computing devices discussed above allowing graphical symbols to be directly entered by a user, avoiding the need for the computing device to translate a sequence of textual characters into a graphical symbol prior to displaying and sending the graphical symbol.

68.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that detects beacons received by the wireless transceiver from a plurality of wireless network access points and prioritizes the detected beacons by strength of detected signal. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or

conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed capability improved the operation of a computing device because it, for example, facilitates connection to the strongest wireless network access point, thereby optimizing speed and reliability of instant messaging.

69.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that stores a profile containing network settings for a network communicating with the communications module and the wireless transceiver through an access point in memory. Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional.  And such a combination constitutes a tangible, specific, concrete invention.  This claimed capability further improves computer operation because it permits, for example, the handheld terminal to connect automatically to a network corresponding to a store profile without user intervention.  *See* Exhibit "A," '837 Patent at Column 5, lines 5-15.

70.     The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that includes an audio player for generating sound from a downloaded file.  Such a claimed combination does not exist in the prior art.  Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention.  Moreover, the provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to music while exchanging instant messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

71.    The advancement claimed in the claims of the '837 patent further includes, *inter alia*, an instant messaging terminal and method that includes a control module that generates sound from files received from an Internet radio station through a wireless, Internet protocol access point. Such a claimed combination does not exist in the prior art. Such a combination was not well-understood, routine, or conventional. And such a combination constitutes a tangible, specific, concrete invention. The provision of this capability in the claimed handheld terminal improved the operation of existing handheld terminals by, for example, allowing users to listen to sound files from an Internet radio station while exchanging instant messages (including generating/entering textual characters and graphical symbols using the data entry device) using a single handheld terminal.

### The Inventions Claimed In The '837 Patent Were Not Well-Understood, Routine, Or Conventional

72.    Prior to Zipit's invention, handheld devices only allowed SMS text messaging over a carrier's cellular network.

73.    Prior to Zipit's invention, text messages were sent over a carrier's cellular network using SMS. Users sending and receiving text messages typically were charged for each text, including at rates of $0.20/text or $20/month.

74.    Zipit's technology allowed instant messaging by a handheld mobile device using Wi-Fi, avoiding the expense of texting and the need to share a desktop computer for instant messaging.

75.    Zipit's patented and claimed technology allowed mobile handheld devices to directly connect to a Wi-Fi access point without using an intermediate protocol in order to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi, instead of the cellular network.

76.     No claims of the '837 patent are unpatentable under §103.  In addition, the patentability of the claims of the '837 patent is confirmed by the overwhelming evidence of widespread acclaim and industry praise that Zipit's "Zippy" and "Z2" devices received.  Zipit's "Zippy" and "Z2" devices received widespread acclaim, including several awards, newspaper stories, television stories, and online articles, including for example (i) Time Magazine's "The Most Amazing Inventions of 2005" Award, which was awarded to Zipit Wireless, Inc. for its "Zippy" device, (ii) the 2005 Chicago Tribune article, which declares that "Zipit Is King Of Messengers," and (iii) PC Magazine's "Winner" of its 2007 "Best of Show" award in the category of "Portable Gear," which was awarded to Zipit for its "Z2" device, Zipit's "Zippy" and "Z2" devices received widespread acclaim.

77.     A nexus exists between Zipit's "Zippy" device and the claims of the '837 patent.

78.     A nexus also exists between Zipit's acclaimed "Z2" device and the claims of the '837 patent.

## Zipit's Foreign Patents

79.     Zipit also has been awarded related foreign patents.  In Europe (including Germany, Great Britain, and France), Zipit was awarded EP 1747619B1.  In Japan, Zipit was awarded JP 5031556.  And in Australia, Zipit was awarded AU 2009251161 B2.

## DEFENDANT'S INFRINGING INSTANT MESSAGING DEVICES

80.     On information and belief, Defendant has and continues to offer for sale, sell, use, and import into the United States and this State smartphones with Wi-Fi capability that send and receive instant messages comprising an emoji/graphical symbol (☺, ☹).

81.     Defendant's representative infringing instant messaging devices include, but are not necessarily limited to Pixel 6, Pixel 6 Pro, Pixel 6a, Pixel 7, Pixel 7 Pro, Pixel 7a, Pixel Fold, Pixel 8, and Pixel 8 Pro.

82.     Defendant's infringing instant messaging devices are specifically designed to: (i) use an Android operating system; (ii) run an instant messaging application; (iii) send and receive instant messages; (iv) access the Google Play store; and (v) download an instant messaging application.

83.     Some of Defendant's infringing instant messaging devices are smartphones that are preloaded with one or more instant messaging application that is able to, and does, send an instant message comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi.  Defendant provides its customers and potential customers with instructions on how to use their instant messaging devices in the United States and in this State.

84.     Some of Defendant's infringing instant messaging devices are smartphones that are Wi-Fi capable that are not preloaded with an instant messaging application.  Instead of preloading an instant messaging application on the smartphone, Defendant instructs its customers to download an instant messaging application from an application store, such as for example the Google Play store, including but not necessarily limited to WhatsApp Messenger, Telegram Messenger, Messenger (Meta), Discord application, TextNow application, and Signal Private Messenger.  Defendant provides its customers and potential customers with instructions on how to use these instant messaging devices in the United States.

85.     On information and belief, Defendant knowingly and intentionally encourages end users to download third party instant messaging applications onto one or more of Defendant's smartphones so that an end user is able to use one or more of Defendant's

smartphones to send instant messages comprising an emoji/graphical symbol (☺, ☹) over Wi-Fi. On information and belief, some of these third-party instant messaging applications also may be preloaded onto Defendant's smartphones. These instant messaging apps allow Defendant's smartphones to send instant messages comprising an emoji/graphical symbol over Wi-Fi.

86.     On information and belief, Defendant is stealing Zipit's patented technology to illegally make money in the United States and in this State. On information and belief, Defendant is illegally make money by, for example, (i) selling smartphones that could not otherwise be sold if they were unable to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (ii) selling instant messaging applications that allow a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iii) selling advertisements that are displayed during an end user's use of an instant messaging application that is able to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; (iv) selling features in an instant messaging application that allows a smartphone to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection; and (v) selling information about end users who use an instant messaging application to send an instant message containing an emoji/graphical symbol (☺,☹) over a Wi-Fi connection.

## COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 7,894,837

87.     Zipit realleges and incorporates herein the preceding allegations of this complaint as if fully set forth herein.

88.     Defendant has in the past and continues to infringe one or more claims of the '837 patent, including claims 25, 26, 32, 40, 41, 42, 47, 55, 56, 60, 61, 66, 67, 68, 73, 74, 79, and 81,

in violation of 35 U.S.C. §§271 (a), (b), and (c).  A representative infringement claim chart applicable to Defendant's infringing instant messaging devices is attached as Exhibit "D."

89.     Defendant's infringing acts, in violation of 35 U.S.C. § 271(a) include, but are not necessarily limited to, Defendant's manufacture, use, offering for sale, sale, and importation of Wi-Fi enabled instant messaging devices and methods, such as Defendant's smartphones, which as shown in Exhibit "D" generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using an instant messaging application that was preloaded onto Defendant's Wi-Fi enabled smartphone by Defendant, such as "Messages," and/or using a third party instant messaging application that has been downloaded onto one of the Defendant's Wi-Fi enabled smartphones, as instructed.

90.     Defendant has in the past and continues to indirectly infringe one or more claims of the '837 patent, in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing direct infringement by other persons, including patrons, customers, and end users, by offering for sale and/or selling Defendant's Wi-Fi enabled smartphones, which as shown in Exhibit "D" generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendant's instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendant's Wi-Fi enabled instant messaging devices, such as Defendant's smartphones, in the United States without authority or license from Zipit and in a manner understood and intended to infringe Zipit's '837 patent.

91.     Defendant instructs customers and potential customers who reside in this State how to send an instant message comprising an emoji/graphical symbol, such as ☺, ☹, ☺, over Wi-Fi using one of Defendant's smartphones.  For example, such instructions are in the form of on-line content and user manuals.

92.     Zipit provided Defendant with written notice of Defendant's infringement of Zipit's '837 patent no later than June 4, 2020.

93.     On information and belief, since receiving notice from Zipit, Defendant has not changed its course of conduct, Defendant has not changed its infringing products, Defendant has not changed its infringing processes, and Defendant has not changed any of its instructions or supporting literature and materials due to Zipit's '837 patent.

94.     On information and belief, since the PTAB confirmed the patentability of Zipit's patent claim numbers 40, 41, and 42 on December 20, 2022, Defendant has not changed its infringing products, Defendant has not changed its infringing processes, and Defendant has not changed any of its instructions or supporting literature and materials due to Zipit's '837 patent.

95.     On information and belief, since the USPTO awarded Zipit the Ex Parte Reexamination Certificate (12009th) on February 28, 2022, Defendant has not changed its infringing products, Defendant has not changed its infringing processes, and Defendant has not changed any of its instructions or supporting literature and materials due to Zipit's '837 patent.

96.     On information and belief, as Defendant deliberately avoided confirming its high probability of wrongdoing, Defendant has and continues to directly infringe, and induce the direct infringement of, one or more claims of the '837 patent, with willful blindness.

97.     Defendant's infringing conduct has been and continues to be egregious.

98.     Defendant also has in the past and continues to indirectly infringe one or more claims of the '837 patent, in violation of 35 U.S.C. § 271(c) by actively, knowingly, and intentionally contributing to an underlying direct infringement by other persons, such as Defendant's patrons, customers, and end users, by offering for sale and/or selling Defendant's Wi-Fi enabled smartphones, which as shown in Exhibit "D" generate an instant message that

includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendant's past or present instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendant's Wi-Fi enabled smartphones in the United States without authority or license from Zipit and in a manner understood and intended to infringe Zipit's '837 patent.

99.     Defendant's Wi-Fi smartphones that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendant's instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendant's Wi-Fi enabled smartphones are: (i) a component and material part of the inventions claimed in one or more claims of the '837 patent, (ii) knowingly and especially designed for use in infringing one or more claims of the '837 patent, (iii) intended to be used to infringe one or more claims of the '837 patent, and (iv) not a staple item of commerce suitable for substantial non-infringing use.

100.    On information and belief, as Defendant deliberately avoided confirming its high probability of wrongdoing, Defendant has and continues to infringe, and contribute to the direct infringement of one or more claims of the '837 patent, with willful blindness.

101.    Customers who reside in this State, and this District, may purchase Defendant's Wi-Fi enabled smartphones that generate an instant message that includes an emoji/graphical symbol, such as ☺, ☹, ☺, using one of Defendant's instant messaging applications, and/or a third party instant messaging application, that has been loaded onto one of Defendant's Wi-Fi enabled smartphones.

102.    Defendant instructs customers and potential customers who reside in this State, including this judicial district, how to send an instant message comprising an emoji/graphical

26

symbol, such as ☺, ☹, ☺, over Wi-Fi using one of Defendant's smartphones.  For example, such instructions are in the form of on-line content and user manuals.

103.    On information and belief, since receiving notice from Zipit, Defendant has not changed its course of conduct, Defendant has not changed its infringing products, Defendant has not changed its infringing processes, and Defendant has not changed any of its instructions or supporting literature and materials due to Zipit's '837 patent.

104.    Defendant's infringement of the '837 patent has been, and continues to be, egregious, reckless, willful, and deliberate, entitling Zipit to increased damages pursuant to 35 U.S.C. §284 and to attorneys' fees pursuant to 35 U.S.C. §285.

105.    Zipit is entitled to: (i) damages adequate to compensate it for Defendant's infringement of the '837 patent, which amounts to, at a minimum, a reasonable royalty; (ii) Zipit's lost profits; (iii) treble damages; (iv) attorneys' fees; (v) costs; and (vi) a permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, Zipit seeks the following relief:

a.    That Defendant is enjoined from further infringement of Zipit's '837 patent pursuant to 35 U.S.C. §283;

b.    That Defendant is ordered to pay damages adequate to compensate Zipit for Defendant's infringement of Zipit's '837 patent pursuant to 35 U.S.C. §284;

c.    That Defendant is ordered to pay Zipit treble damages pursuant to 35 U.S.C. §284;

d.    That Defendant is ordered to pay prejudgment interest pursuant to 35 U.S.C. §284;

e.    That Defendant is ordered to pay all costs associated with this action pursuant to 35 U.S.C. §284;

f.      That Defendant is ordered to pay Zipit's attorneys' fees pursuant to 35 U.S.C. §285;

g.      That Zipit be granted such other and additional relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Zipit demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted, this 19th day of October, 2023.

*/s/ Richard C. Weinblatt*

Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, DE  19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

Stephen R. Risley (pro hac vice application
to be filed)
KENT & RISLEY LLC
5755 North Point Parkway, Suite 57
Alpharetta, GA 30022
Telephone: (404) 585-2101
Email: steverisley@kentrisley.com

Attorneys for Plaintiff
Zipit Wireless, Inc.